## PANGBURN v. CROWNER.

*(Supreme Court, General Term, Fifth Department.  January 22, 1892.)*

TROVER—TITLE TO GOODS.

In trover for a number of cows it appeared that plaintiff's husband drove the cows at night from plaintiff's premises. The next day they were found in defendant's possession, who refused to return them, claiming to have purchased them from plaintiff's husband. The evidence clearly showed that plaintiff had supported the family; that she had purchased the cows with her own funds; that when she bought feed for them on credit it was charged to her; and that the owner of the premises that she occupied had given her permission to live there. *Held* sufficient to sustain the finding of the referee that the cows were plaintiff's.

Appeal from judgment on report of referee.

Action by Pamelia Pangburn against John Crowner. From a judgment for plaintiff entered on the report of a referee, defendant appeals. Affirmed.

Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.

*Wm. Spargur*, for appellant. *Blackman & Hall*, for respondent.

DWIGHT, P. J. The action was trover for a number of cows. They were driven off in the night by the plaintiff's husband from premises occupied by her, and neither husband nor cows ever came back. The cows were found the next day in the possession of the defendant, who claimed to have bought them from the husband, and refused to return them on demand. The only question was of the title to the cows at the time they were driven away, and the finding of the referee in that respect was perfectly well supported by the evidence. The plaintiff had been married to Pangburn for upwards of 40 years, and during that time had evidently been at the head of the household. Besides taking care of her family, she had done a good deal of work for others, and earned some money which, with the consent of her husband, she kept and used as her own. So, too, she had for her own the money for the butter which she made. Most of this money, from both sources mentioned, she spent for family uses, but some of it she invested from time to time in the cows which are the subject of this action. She generally bought the feed for the cows, and, when the money was not paid for it, it was charged to her. It was to her that permission was given by one Dyke to occupy the little place where she and her husband had been living for several years before the cows were taken. The right of possession of the premises was in litigation during that time between Dyke and other claimants, and the latter gave to the plaintiff's husband a lease two or three years before this action was brought. The lease was probably given for the purposes of the ejectment ac-

tion, and that has since been determined against the lessors. What was the cause of Pangburn's desertion of his wife does not appear. It may, perhaps, be conjectured from a statement in her testimony to the effect that he never made her any trouble when he was sober. The facts stated appear by the testimony of the plaintiff, corroborated in important particulars by disinterested witnesses. Her testimony is substantially uncontradicted except by that of her husband, which is seriously discredited by impeachment, and by proof of repeated statements to the contrary, on oath and otherwise. The effect of the testimony, as a whole, is clearly to overcome the presumption that the property in question belonged to the husband. If, or so far as, any part of her property, or of the money with which it was purchased, was to be considered as a gift from the husband, the fact would not affect the question of the plaintiff's right. An executed gift from a husband to a wife is perfectly good, except it is made in fraud of creditors; and there is no such question in this case. Neither is there any question here of any right in the defendant as a *bona fide* purchaser for value. He sent a man to help Pangburn drive away the cows in the night, and he took them, ostensibly, on an outlawed debt of Pangburn's, though it is probable some other compensation was made to the latter for his agency in the transaction. We have no doubt of the correctness of the findings of the referee, both as to the facts and the law of this case. The judgment must be affirmed. All concur.